**Rudolph KELLEY, Jr., Plaintiff–Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security,\* Defendant–Appellee.**

**No. 95–5023.**

United States Court of Appeals, Tenth Circuit.

Aug. 18, 1995.

---

\* Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103–296. Pursuant to Fed.R.App.P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and

Paul F. McTighe, Jr., Tulsa, OK, for plaintiff-appellant.

Stephen C. Lewis, U.S. Atty., Joseph B. Liken, Acting Chief Counsel, Region VI, Christopher Carillo, Lead Atty., Office of the Gen. Counsel, Social Sec. Admin., Dallas, TX, for defendant-appellee.

Before MOORE, SETH, and EBEL, Circuit Judges.

SETH, Circuit Judge.

Claimant Rudolph Kelley, Jr., appeals the district court's affirmance of the decision by the Secretary of Health and Human Services (Secretary) denying his application for social security disability benefits. Because the Secretary's decision is supported by substantial evidence and no legal errors occurred, we affirm.[1]

Mr. Kelley applied for disability benefits in March 1991, alleging an inability to work after November 16, 1990, due to hip prob-

---

Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision.

1. After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f) and 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

lems and Crohn's disease. After a hearing, the administrative law judge (ALJ) concluded that Mr. Kelley's impairments did not meet or equal a listed impairment, and that he retained the ability to perform a significant number of jobs in the economy. The Appeals Council denied review, making the ALJ's decision the final decision of the Secretary.

■ We review the Secretary's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). We may neither reweigh the evidence nor substitute our discretion for that of the Secretary. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.1991).

■ Mr. Kelley has been diagnosed with Reiter's syndrome since age fourteen. On October 18, 1990, he was hospitalized for acute hip pain due to exacerbation of his Reiter's syndrome. An MRI revealed avascular necrosis of both femoral heads. After treatment with pain medication, antibiotics and anti-inflammatories, Mr. Kelley's hip pain resolved and he was released on October 24, 1990. R. II at 124–26.

On November 28, 1990, Mr. Kelley was again examined for left hip pain. He reported intermittent pain and difficulty walking, severe enough to keep him from working. *Id.* at 175. Upon examination, Mr. Kelley's range of motion was somewhat limited with mild discomfort and a normal gait. After consulting with orthopedic surgeon Dr. Robertson, Mr. Kelley was scheduled for a hip replacement in March 1991. On December 18, 1990, Mr. Kelley reported that his hip pain was well-controlled. *Id.* at 161.

In December 1990, Mr. Kelley was hospitalized for several days for vomiting, nausea, diarrhea, and weakness. Tests revealed findings consistent with Crohn's disease, an inflammatory bowel disease. Mr. Kelley was released "in good condition" after a course of rehydration and medication. *Id.* at 162. In February 1991, it was noted that Mr. Kelley's Crohn's disease was being controlled by medications. *Id.* at 174, 201.

On March 28, 1991, Mr. Kelley underwent hip replacement surgery, and by April 5, 1991, was ambulatory on crutches with a marked improvement of his pain. In May 1991, Mr. Kelley progressed to a cane, with an improved range of motion and a note that "[h]is preoperative pain is markedly relieved." *Id.* at 218. On October 2, 1991, his condition was "markedly improved," with no complaints of pain, although he still had "some aching about his hip." *Id.* at 273. Dr. Robertson released Mr. Kelley to work with the restrictions that he not subject his hip to significant stress and that he avoid stooping and lifting. *Id.*

In March 1992, Mr. Kelley was examined by consulting physician Dandridge. He reported that Mr. Kelley did not use a cane, that his range of motion was somewhat restricted, and that he had the functional capacity to sit for an hour at a time for a total of six hours, and to walk or stand for an hour at a time for a total of four hours. Dr. Dandridge opined that Mr. Kelley could lift and carry up to twenty-five pounds frequently, could use his hands and feet, was limited in his ability to crawl, squat or climb, and had environmental restrictions. *Id.* at 284–85.

At the disability hearing, Mr. Kelley testified that he could not stand for more than thirty minutes or sit for more than forty-five minutes at a time, but that he could work for eight hours if he could alternate sitting and standing. *Id.* at 38–39, 44, 45–46. He noted that he would have to take pain medication and that the medication made him sleepy. *Id.* at 46. A vocational expert testified that Mr. Kelley could perform several sedentary jobs, including the job of cashier, which would allow him to alternate sitting and standing. Such jobs would not be available, however, if Mr. Kelley needed a two-hour nap at noon each day. *Id.* at 49–51.

The ALJ concluded that Mr. Kelley retained the ability to perform a significant number of jobs, even if he were required to alternate sitting and standing, based on his ability to work as a cashier. The ALJ discredited Mr. Kelley's assertion that he needed a two-hour nap each day, noting his failure to report such a restriction to Dr. Dandridge.

The ALJ's findings are well-supported by the record. Although Mr. Kelley was incapacitated for a time due to his hip impairment and surgery, his condition improved to the point of returning to work in less than twelve continuous months. *See* 42 U.S.C. § 423(d)(1)(A). His Crohn's disease also appears to be well-controlled. No physician has opined that Mr. Kelley is disabled, and, in fact, three physicians have opined that he retains the ability to perform at least some sedentary work. *See* R. II at 201, 273, 284–85. The vocational expert identified a substantial number of cashier jobs which Mr. Kelley could perform. The Secretary's decision, therefore, is supported by substantial evidence.

Mr. Kelley's argument that Social Security Ruling 83–12 directs a finding of disability based on his need to alternate sitting and standing is without merit. The ruling discusses a category of cases in which a claimant's nonexertional limitations place him between categories, such as a claimant who must alternate sitting and standing, and advises that "a [vocational expert] should be consulted to clarify the implications for the occupational base." Soc.Sec.Rul. 83–12. As this is exactly the procedure that was followed here, there was no legal error.

In addition, the ALJ's conclusion that there are a significant number of jobs available which Mr. Kelley could perform, based on the vocational expert's identification of 615,072 cashier jobs nationally and 4,024 such jobs in Oklahoma, is supported by substantial evidence. *See Trimiar v. Sullivan,* 966 F.2d 1326, 1330–32 (10th Cir.1992) (identifying factors to be considered in determining what constitutes a "significant number" of jobs).

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.