**Laverna M. JORGENSEN, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner, Social Security Administration, Defendant.**

**Civil Action No. 95–1466–WEB.**

United States District Court, D. Kansas.

April 2, 1997.

Ross E. Stubblefield, Kansas Legal Services, Topeka, KS, for Plaintiff.

Stephen K. Lester, Assistant U.S. Atty., Witchita, KS, Frank V. Smith, III, Chief Counsel, Region VII, of counsel by Jamie G. Crawford, Asst. Regional Counsel, for Defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Senior District Judge.

Plaintiff Laverna M. Jorgensen filed an application for disability insurance benefits on March 17, 1993, alleging a disability onset date of May 10, 1987, due to Parkinson's disease. After initial denials of her claim, she pursued the matter to a hearing held before an Administrative Law Judge on September 14, 1994. Mrs. Jorgensen, who was represented by counsel, appeared and testified at this hearing. At the request of the ALJ, Cindy Younger, a qualified vocational expert, also appeared and testified.

In an opinion dated March 24, 1995, the ALJ found that plaintiff was not disabled at step four of the controlling analytical sequence since she was able to return to her previous work as a secretary. The Appeals Council concluded that there was no basis to grant a review of the findings of the ALJ, and that decision stands as the final decision of the Commissioner. Plaintiff has appealed the adverse ruling to this court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. 405(g).

In this appeal, plaintiff contends that the ALJ erred in finding that plaintiff did not meet or equal the listed impairment of Parkinson's disease which appears in the Appendix to 20 C.F.R. 404, Subpart P, § 11.06, that the finding that plaintiff was not creditable is in error, and that the finding that plaintiff could perform her past relevant work is not supported by the evidence.

■ The Commissioner's decision is to be reviewed "to determine whether the factual findings are supported by substantial evidence in the record, viewed as a whole and whether the correct legal standards were applied." *Saleem v. Chater,* 86 F.3d 176 (10th Cir.1996); *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir.1993). 42 U.S.C. § 405(g). Substantial evidence is of course "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen,* 876 F.2d 1451, 1453 (10th Cir. 1989). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994). With these standards in mind, the court has reviewed the record and finds that the evidence supports the finding that plaintiff is not disabled under the law.

At the time of hearing, plaintiff was 60 years old, with two years of college, and a past work history as a secretary and bookkeeper. She alleged that she became disabled beginning May 10, 1987, and she continued to meet insured status requirements through September 30, 1992.

In evaluating the evidence, the ALJ followed the required five-step analysis for determining whether a claimant is disabled. See generally, 20 CFR Ch.111 §§ 404.1520, et seq. (4–1–95 Edition), and *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Williams v. Bowen,* 844 F.2d 748, 750–752 (10th Cir.1988). Step one determines whether a claimant is presently engaged in substantial gainful activity. 20 CFR § 404.1520(b) If he or she is, benefits are denied. At this first step, it is clear that plaintiff was not engaged in gainful employment.

■ The second step is to determine whether there is "an impairment or combination of impairments which significantly limits ... physical or mental ability to do basic work activities." Age, education, and work experience are not considered at this step. 20 CFR § 404.1520(c). These impairments must be such as to significantly limit the claimant's ability to do basic work activities—that is—"the abilities and aptitudes necessary to do most jobs."... *Williams v. Bowen, supra* 844 F.2d at 751. Examples of these abilities include physical functions such as walking, standing, sitting, the capacity to see, hear and speak, the understanding and ability to carry out simple instructions, use of judgment, dealing appropriately with supervision and co-workers, and with changes in a

routine work setting. 20 CFR § 404.1521. If the evidence makes a *de minimis* showing of medical severity, then the ALJ must proceed to step three. It is without dispute that plaintiff has Parkinson's disease, and the ALJ found that plaintiff has a "severe impairment" by Social Security definition.

At step three of the analysis, the question is whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. If the impairment is listed, it is conclusively presumed to be disabling without further reference.

If the impairment is severe, but is not a listed impairment, the inquiry proceeds to a fourth step which requires a determination of the claimant's "residual functional capacity and the physical and mental demands of the work ... done in the past." If the claimant can still perform her past work, she is not disabled. 20 CFR § 404.1520(e).

The ALJ determined that while plaintiff does have Parkinson's disease, her condition did not qualify as a listed impairment and did not cause a degree of limitation which would prevent plaintiff from returning to her past employment as a secretary at any time prior to September 30, 1992, when her insured status ended.

These findings are supported by substantial evidence. All of the medical reports show that while plaintiff's disease was progressive in nature, it was kept under control through medication adjustments without significant neurological impairment, at least through September, 1992. Plaintiff was first treated for the disease in December, 1986, when she began taking Sinemet three times a day. In January, 1987, she had no "resting tremors" no "cogwheel rigidity," hypokinesia [1] or "dysdiadochokinesia." [2] Her gait was stable, and postural reflexes were satisfactory. In April, 1987, plaintiff started having

shaky movements in her right extremities, and her Sinemet dosage was increased to five times a day. By January 4, 1988, the tremors had decreased and plaintiff had no significant neurological signs "of an extrapyramidal disorder."

Plaintiff began treatment with the University of Kansas Medical Center in April, 1989, and on July 26 of that year, Dr. Hubble reported that the Parkinson's disease was stable. There was no evidence of bradykinesia,[3] no postural instability, and no shuffling gait. Mrs. Jorgensen had some "mild resting tremors of the right side," but her motor strength was good and her coordination intact. By January 18, 1990, Dr. Hubble noted that plaintiff's disease was progressing and she was experiencing the "wearing off" phenomenon—that is—prior to the next dose of medicine, she would notice her right side "dragging" and motor functioning deteriorating. An examination at that time revealed mild hypophonia,[4] mild masked facies, fine resting tremor of the left hand and rigidity through the right limbs, and changes were made in her medication. In June, 1990, plaintiff's Sinemet medication was adjusted, and she was started on the new medication Eldepryl to provide a new form of therapy for Parkinson's disease. (Ex. 18, p. 13).

By September 20, 1990, plaintiff reported incidents of nausea, and her medication was adjusted. An examination on that date revealed her condition to be "really quite remarkably good." She had very little hypophonia and had no tremor or rigidity, although there was "a very mild hesitation in her gait." (Ex. 18, p. 12).

In a visit in January, 1991, plaintiff complained of headaches which affected her vision, and she was advised to stop Eldepryl. In July, 1991, it was reported that the headaches had ceased and she functioned "at a fairly high level." An April, 1992, evaluation indicated that the Parkinson's symptoms were relatively well controlled.

---

1. "Abnormally decreased motor function or activity." Dorland's Medical Dictionary, 27th Ed. (1988).

2. "Impairment of the ability to perform rapid alternating movements, as sequential pronation and supination of the arm." Dorland's, *supra*.

3. "Abnormal slowness of movement; sluggishness of physical and mental responses."

4. "Defective speech due to lack of phonation and resulting in whispering." Dorland's, *supra*.

Plaintiff visited Dr. Loeb on August 18, 1992, with complaints of low back pain, with radiation to her left leg and hip. (Exhibit 19). X-rays revealed very minor hypertrophy of the facet joints in the lower lumbar spine with no evidence of spinal stenosis. The diagnosis was degenerative joint disease, and she completed two weeks of physical therapy. Office notes from Dr. Villarante, dated September 4, 1992, indicate that she was able to do regular household activities. (Exhibit 20).

An examination on October 2, 1992, led to the following report from Dr. Hubble: (Exhibit 18, p. 5):

Physical examination reveals dyskinesias [5] particularly pronounced in the left arm. They are mild to moderate in intensity. There was no tremor on today's examination and I could appreciate no bradykinesia. Rigidity could not be assessed. She could arise from a chair without assistance. She had a slightly stopped posture. Gait was slightly slowed with some dyskinetic movements of the left arm. Postural stability was normal.

At that time, Dr. Hubble made further adjustments to plaintiff's medication.

Additional medical reports following the expiration of plaintiff's insured status appear in the record. In December, 1992, Dr. Hubble reported that plaintiff had "moderate choreiform movements," but no tremor or rigidity. She had a "mildly slow gait," and postural reflexes were intact. She "continues to have Parkinson's disease with motor fluctuations," and reported some depressive symptomatology. Medication adjustments were made. (Ex. 18, p. 4).[6]

An examination on March 18, 1993, revealed "very mild bradykinesia," with no rigidity, and "rare choreiform movements [7] of the left foot and leg." At that time Dr. Hubble reported that plaintiff "continues to do rather well overall in regards to her Parkinson's," although she had increasing diffi-

culty with motor fluctuations. At that time she reported to Dr. Hubble that she was seeking disability benefits, and the doctor noted: "I agree that her Parkinsonism likely limits her ability to perform work related activities." (Ex. 18, p. 3). An examination on July 1, 1993, led to further adjustments in medication. At that time Dr. Hubble reported that plaintiff had "mild to moderate choreiform dyskinesias throughout" without tremor, bradykinesia, or rigidity. Postural reflexes were intact, and gait was "mildly disturbed by chorea."

At her hearing on September 17, 1994, almost two years after her insured status had expired, plaintiff testified that her Parkinson's disease is getting worse and that she has "off periods" when she has difficulty walking and experiences tremors in her right leg and hands. This can occur a couple of times a day, depending on when she eats and takes her medication. She has no limits on lifting, carrying or sitting, and continues to do her housework and daily activities. She does some sewing and craft work, plays bridge, and gardens although she has giving up bowling. She spends afternoons with friends, and drives, but avoids doing so during her "off periods." Plaintiff testified that she occasionally experienced her "off periods" prior to September 30, 1992, but not as often as she does now. Plaintiff listed Carbidopa/Lenodopa, Sinemet, Lodosyn and Permax medications which she has taken since 1986 for Parkinson's disease, and takes non-prescriptions Advil or aspirin for headaches and Alka Seltzer for upset stomach.

It is also significant that plaintiff testified at the hearing that it was her own decision to quit working after she was diagnosed with Parkinson's disease. She testified that she had trouble accepting the diagnosis and that she quit working, not because of any inability to do the job, but because she "was depressed, for one reason, and I was trying to

---

**5.** "Impairment of the power of voluntary movement, resulting in fragmentary or incomplete movements." Dorland's, *supra.*

**6.** While a report dated December 8, 1992, indicates some depressive symptoms, records dated August 2, 1993, indicate no psychiatric disturbance.

**7.** "The ceaseless occurrence of a wide variety of rapid, highly complex, jerky movements that appear to be well coordinated but are performed involuntarily." Dorland's, *supra.*

get some medical and different opinions, you know, and I went to different places. I just, I don't know, I just—depression mainly, I think was the reason" (Tr. p. 230). Plaintiff further testified that she was treated by a psychiatrist for these depressive symptoms for a number of months beginning in 1987, shortly after she quit working, and that her depression had been pretty well resolved by the time treatment was concluded. She further testified that she had considered returning to employment and had applied "for a couple" of positions for part-time secretarial jobs.

■■■ In this appeal, plaintiff contends that the ALJ erred in finding that plaintiff's impairments do not meet or equal the criteria established in the Listings of Impairments, specifically Section 11.06 of 20 C.F.R. Pt.404, Subpart P, Appendix 1, which describes the Parkinson syndrome in this manner:

> 11.06 *Parkinsonian syndrome* with the following signs: Significant rigidity, brady kinesia, or tremor in two extremities, which, singly or in combination, result in sustained disturbance of gross and dexterous movements, or gait and station.

The above medical evidence clearly fails to establish that at any time prior to September 30, 1992, did plaintiff experience "significant rigidity, bradykinesia or tremor," or that she had "sustained disturbance of gross and dexterous movements or gait and station," in connection with her disease. Indeed, the evidence establishes that her symptoms were for the most part controlled with medication during the relevant time period. Medical conditions which can be controlled with treatment are not disabling. See *Kelley v. Chater*, 62 F.3d 335 (10th Cir.1995.)

In this case, the ALJ determined that the medical evidence established that plaintiff has severe Parkinson's disease and degenerative joint disease but that, as of September 30, 1992, she had the residual functional capacity to perform sedentary work-related activities except for work involving walking on uneven surfaces and climbing stairs. He further found that plaintiff's past relevant work as a secretary did not require the performance of work-related activities precluded by these limitations. 20 CFR 404.1545, 404.1565, and that plaintiff's impairments did not prevent her from performing her past relevant work as of September 30, 1992. These conclusions are supported by substantial evidence.

■■■ At the hearing, plaintiff testified that in her prior work she did payroll, inventory, and other reports, generally filled out by hand and not typewriter or computer, and that she used the adding machine in her work. She also testified that she occasionally stood or walked at that job, and occasionally lifted ledgers and other items. In this appeal, plaintiff contends that her past work as a secretary-bookkeeper for a beer distributor was not sedentary work but "light exertional activity" because, while performing it, plaintiff occasionally walked back to the warehouse and sometimes lifted "heavy ledgers." The test is not whether plaintiff could perform the job that she actually performed in the past—the test is whether she can perform her past relevant work as it is generally performed in the national economy. *Martin v. Sullivan*, 901 F.2d 650, 652–653 (8th Cir.1990).

The ALJ questioned the vocational expert at length concerning the physical limitations involved in plaintiff's prior work career as a secretary-bookkeeper, particularly as that work pertained to lifting requirements. That expert testified that as generally performed in the economy, the occupation of secretary is a sedentary occupation and that, as a general proposition, a person of plaintiff's education and background with a diagnosis of Parkinson's disease and some degenerative findings would not be precluded from her prior employment. When it is assumed that there are limitations as to lifting about 20 pounds occasionally and ten pounds maximum frequently, with an opportunity to sit a couple hours during the day and a tolerance for five or six hours of standing, such a situation would also allow plaintiff to return to past work as generally performed in the economy. When it is assumed that either because of medication and other management modalities and/or energy level, it would be necessary to limit lifting to ten pounds maximum, and to limit standing to about two

hours, and that a person can remain seated for five to six hours, such a situation would also allow plaintiff to return to past work as generally performed in the economy. If the person also had limitations prohibiting walking on uneven surfaces or climbing stairs, then such person would not be able to return to her prior work

▪ Plaintiff alleges that the hypothetical questions put to the vocational expert were faulty because they did not include all of her claimed limitations. Without question, the ALJ may restrict the questions to those limitations which he has found to be based upon credible evidence. *See Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir.1993). The hypothetical questions put to the expert took into account plaintiff's limitations; and the expert's opinion, based upon those questions, is sufficient to sustain the finding that plaintiff's impairments did not prevent her from performing her past relevant work as of September 30, 1992.

The court must conclude that substantial evidence supports the Commissioner's decision denying benefits to this plaintiff. Accordingly, the judgment of the Commissioner is AFFIRMED.