**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 1 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DONALD R. NEIL,

       Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

       Defendant-Appellee.

No. 97-7134
(D.C. No. 96-CV-229-B)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BARRETT**, and **HENRY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Donald R. Neil appeals from the denial of social security disability and supplemental security income benefits. He argues that the administrative law judge (ALJ) failed to recognize that he is disabled under the listings, failed to follow this court's pain standard, failed to follow the treating physician rule, and failed to ask a proper hypothetical question to the vocational expert (VE). He also alleges that the magistrate judge, and therefore the district court, failed to correctly apply this court's test for assessing a claimant's refusal to follow treatment. We exercise jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405g. We are persuaded by plaintiff's claims of error and remand for further proceedings.

## Disability Claim

Plaintiff was born on March 22, 1935. He graduated from high school and completed two years of junior college. His past relevant work included: closet shelf cutter, office worker, carpenter supervisor, and area relief manager trainee. He alleges that he has been disabled since October 31, 1989, due to injuries suffered in a motor vehicle accident on November 10, 1989, when the truck he was driving was rear-ended, jolting him violently. Plaintiff lived in Florida at the time of the accident, but moved to Oklahoma in 1993. His alleged impairments include a ruptured disk in his neck, neck pain, severe headaches, numbness in his

arms and hands, and limited ability to sit, stand, or walk because of back pain. He also alleges impairments because of loss of bone, loss of bowel and bladder control, gait disturbance, fatigue, and difficulty concentrating because of pain. He was last insured for social security disability benefits on December 31, 1992, and must prove he became disabled before that date to secure those benefits. For supplemental security income benefits, he must prove only that he has become disabled. Plaintiff was unrepresented at the administrative hearing, but has been represented by counsel since then.

## Summary of the Medical Evidence

After his motor vehicle accident in 1989, plaintiff initially sought treatment from an unnamed doctor whose notes are not in the record. See Appellant's App., Vol. II at 151, 161. Plaintiff reported that he was treated weekly with medication and therapy and wore a neck brace, but that the pain, while relieved at first, increased until it was constant. See id. at 151. In February 1991, while still in Florida, plaintiff began seeing Donald W. Hall, O.D., complaining of neck pain, headaches, pain from his left shoulder down to the elbow, numbness and tingling in his lower arm and fingers, and an intermittently itchy lump on the right side of his thoracic spine. Id. at 161. Among other symptoms, Dr. Hall found muscle spasms. See id. at 182. He reported that an MRI performed by David K. Davis,

M.D., on April 17, 1991, revealed "dorsal bulging and herniation of the disc material at C-5 and C-6 in both directions, giving slight displacement of the spinal cord." Id. at 162; see also id. at 186. Dr. Hall deemed physical therapy "a palliative measure until surgical intervention [could be] initiated," and referred plaintiff to Jeffrey S. Walker, M.D., a neurosurgeon. Dr. Walker noted, among other things, muscle spasm and depression. See id. at 153. He ordered a myelogram and post myelogram CT scan, which confirmed that plaintiff had a "left sided large ruptured disc at [C]6-7 with some stenosis [narrowing] at that level. At [C]5-6 there was a large spondulitic [sic] bar [inflammation] with fairly significant stenosis." Id. at 148. On August 27, 1991, Dr. Walker advised plaintiff to undergo a "two level anterior cervical microdiscectomy and fusion," to excise the ruptured disk and fuse his spine together. Id. at 148. He gave plaintiff "no guarantees . . . whatsoever" about the outcome, id. at 148, and explained that the risks of the surgery included "headache, dye reaction, bleeding, infection, some kind of unforseen [sic] neurologic deficit, . . . quadraplegia [sic], . . . residual neck pain, no arm pain relief, hoarseness, difficulty swallowing, etc.," id. at 149. Plaintiff did not have the surgery, saying he could not afford it. See id. at 151. Dr. Walker recorded in his notes that plaintiff accepted the risks of delaying surgery, see id. at 148, which could include "weakness, numbness in the arms, spinal cord injury, paralysis, loss of bowel/bladder control, gait disturbance, etc.,"

id. at 154.  On April 10, 1992, Dr. Hall recorded in his notes that plaintiff was in "a considerable dilemma [because there was] not enough money left in his P.I.P.[1] money to pay for the surgery . . . [and t]he neurosurgeons [did] not want to take a letter of protection for [it]."  Id. at 162.

In November 1992, plaintiff was examined by Francisco B. Gomes, M.D., another neurosurgeon.  Plaintiff was still complaining of neck pain and stiffness; headaches; pain in his left shoulder; pain, numbness, and tingling in his left arm down to his fingers; and pain, numbness and itching over the lower thoracic region.  See id. at 196, 199, 200.  Dr. Gomes reported that plaintiff had erect posture and normal gait, but that his grip strength was weak in his left hand, the range of motion of his cervical spine was severely restricted, his deep tendon reflexes were hypoactive, and he had a sensory loss at C7-8.  See id. at 197.  He concluded that surgery "in all probability" would be required.  Id. at 198.  Until plaintiff's symptoms got worse, however, Dr. Gomes preferred to "follow a conservative route" of pain medication, a nonsteroidal anti-inflammatory

--------

[1]     P.I.P. appears to be a reference to personal injury protection, a required element of motor vehicle insurance under Florida law.  See, e.g., Fla. Stat. Ann. § 627.736(1).  Plaintiff's wife testified that he was awarded a little over $30,000, although both plaintiff and the ALJ referred to the award as worker's compensation.  See Appellant's App., Vol. II at 55.  Plaintiff was not injured at work, however, and Dr. Hall's note suggests that the award may have been a settlement under plaintiff's or the other driver's car insurance.

medication, and intermittent cervical traction.  Id. at 195.  He advised plaintiff to avoid heavy lifting, pulling, and pushing.  See id.

After plaintiff moved to Oklahoma, he sought treatment from John F. Rice, D.O.  Dr. Rice reported plaintiff's history of back problems and C5-6 cervical spondylosis with radiculopathy in both arms, weakness in the left hand, and suspected ruptured disk at C5-6.  See id. at 209.  He said that plaintiff needed anti-inflammatory medicine daily and intermittent traction; he continued plaintiff's prescription for pain medication as well.  See id. at 210-11.  Dr. Rice repeatedly expressed the opinion that plaintiff was not capable of working.  See id. at 209, 210, 211.  Plaintiff testified that Drs. Rice, Walker, and Gomes all warned him that if he had an accident as minor as stepping off the curb wrong before the surgery, he could become paralyzed.  See id. at 68; see also id. at 154. Plaintiff's wife testified that his doctors no longer considered him a candidate for surgery due to the continuing deterioration of the disks in his neck.  See id. at 69-70.

Finally, plaintiff was also examined in Oklahoma by the agency's consultative physician, James M. Ritze, O.D., in April 1994.  Dr. Ritze took plaintiff's history and performed range of motion tests.  Among other findings, he noted muscle spasm at C3-6, sensory loss, and pain.  See id. at 207.  His findings on plaintiff's cervical range of motion are consistent with those of Dr. Gomes.

See id. at 205.  He offered no conclusions concerning plaintiff's pain or other complaints, need for therapy or surgery, or ability or inability to work.

In addition to the injuries caused by his motor vehicle accident, plaintiff suffered a compound fracture of the lower lumbar spine in 1979 when a tree fell on him while he was working for a tree company.  See id. at 59-60, 65.  He also had unsuccessful surgery in the mid-1980's for a right inguinal hernia, and part of his colon was removed due to diverticulitis in 1985.  See id. 58, 153.  His intestinal problems continue, see id. at 67, and his lower back problems have gotten worse since his accident in 1989, see, e.g., id. at 204.

## Discussion

The ALJ denied plaintiff's claim at step five of the evaluation sequence.  See generally Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).  He summarily concluded at step three that plaintiff did not meet any of the listings, and decided at step four that plaintiff could not return to any of his past work.  He then determined that plaintiff nevertheless retains the residual functional capacity (RFC) to perform a range of light work limited by certain physical restrictions but not by significant pain.  He noted that plaintiff had not had the surgery recommended for him, despite receiving a $30,000 award.  Based on vocational

testimony, he concluded that plaintiff is not disabled. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

Plaintiff then brought this suit. Like the ALJ, the magistrate judge also noted that plaintiff had not undergone surgery, despite his $30,000 award. He found that plaintiff's allegations of error were without merit. The district court adopted the magistrate judge's recommendation, with only a minor modification.

We review the Commissioner's decision on the whole record to determine only whether the factual findings are supported by substantial evidence and the correct legal standards were applied. See Goatcher v. United States Dep't of Health & Human Servs., 52 F.3d 288, 289 (10th Cir. 1995). We may not reweigh the evidence or substitute our judgment for that of the agency. See Kelley v. Chater, 62 F.3d 335, 337 (10th Cir. 1995).

Plaintiff contends he meets listing 1.05C, which covers

> "[o]ther vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>     1. Pain, muscle spasm, and significant limitation of motion in the spine; and
>     2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. subpt. P, app. 1, § 1.05C.

Under 42 U.S.C. § 405(b)(1), the ALJ is "required to discuss the evidence and explain why he found that appellant was not disabled at step three." Clifton

v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). Despite this requirement, the ALJ made only a summary conclusion that plaintiff was not disabled under any of the listings. This court may not properly weigh the evidence in the first instance. See id. at 1009. In light of all the medical evidence relevant to listing 1.05C, we must remand for the ALJ to perform the required analysis.

If plaintiff otherwise meets the listing, he cannot be precluded from receiving benefits because he did not have the surgery his doctors recommended. This court assesses a claimant's failure to pursue treatment under a four-part test: (1) whether the treatment would have restored the claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and (4) whether the excuse was justified. See Weakley v. Heckler, 795 F.2d 64, 65-66 (10th Cir. 1986). The only evidence in the record relative to the outcome of the surgery is that "no guarantees were given whatsoever" about it. Appellant's App., Vol. II at 148. In fact, plaintiff was warned that the result could range anywhere from improvement to quadriplegia. See id. at 149. Moreover, the only evidence in the record relative to plaintiff's failure to have the surgery shows that he did not so much refuse it, as it was refused to him when he told his doctors he could not afford it. See id. at 162. The ALJ did not ask plaintiff how much the surgery would cost or why his $30,000 settlement was not enough to cover it. See id. at 55. These are questions the ALJ plainly should

have asked to fulfill his heightened duty of inquiry toward this unrepresented claimant.  See Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir. 1993).  Nevertheless, the record, as developed, provides no basis for a finding that plaintiff had enough money but still chose not to have the recommended surgery.

Because we remand for additional proceedings at step three, it is unnecessary to discuss plaintiff's allegations of error at step five in detail.  We would note, however, that findings as to the credibility of allegations of pain should be closely linked to the evidence.  See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995); S.S.R. 96-7p, 1996 WL 374186, at *2.  Hypothetical questions should "relate with precision all of a claimant's impairments."  Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted).  Finally, an ALJ may not substitute the conclusory and unsupported opinion of a treating physician that a claimant cannot work with the even more conclusory and unsupported opinion of an examining physician (let alone his own opinion) that the claimant can work.

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the case is REMANDED with directions for the district court to remand to the agency for further proceedings in accordance with this order and judgment.

Entered for the Court


Robert H. Henry
Circuit Judge