**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 7 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DAVID HARRISON,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 98-7173
(D.C. No. 97-CV-468)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**  *

---

Before **TACHA** , **KELLY** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant David Harrison appeals from the district court's order affirming the decision of the Commissioner of Social Security denying his application for supplemental security income benefits. Claimant's application, filed on April 11, 1995, was denied initially and on reconsideration. [1] Claimant, a forty-year-old male with a high school education, alleged disability beginning on April 1, 1995, due to obesity with hypertension, back pain, knee pain, shoulder pain, and headaches. [2] Following a hearing, the administrative law judge (ALJ) found that, although claimant could not return to his past relevant work as a material handler, yard attendant at a stockyard, or nurse's aide, he was able to do light or sedentary work available in the national economy. Relying on the medical-vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ concluded that claimant was not disabled. The district court adopted the magistrate judge's recommendation that the Commissioner's decision be affirmed. Claimant appeals. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

---

[1] Claimant filed a prior application on February 5, 1992, which was denied following a hearing. He filed a second application on March 2, 1994, which was denied initially and on reconsideration. He requested a hearing on the denial of this second application which was dismissed when claimant failed to appear. *See* R. Vol. II at 41-42.

[2] Although claimant alleged that his impairments caused him to stop working on September 1, 1995, the administrative law judge noted that his social security earnings reports indicate that he had not engaged in any substantial gainful activity since 1988. *See* R. Vol. II at 63.

On appeal, claimant asserts that (1) the ALJ erred in failing to find that the severity of claimant's condition meets or exceeds that found in the listing of impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 9.09B; (2) the ALJ's evaluation of claimant's residual functional capacity (RFC) was not supported by substantial evidence; and (3) the ALJ erred in failing to present a complete hypothetical question to the vocational expert. We review the Commissioner's decision on the whole record to determine only whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995). We may not reweigh the evidence or substitute our judgment for that of the agency. *See Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

The ALJ denied claimant's application at step five of the evaluation process. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining the five steps in detail). At step three of the sequential evaluation, the ALJ determines whether the claimant's impairment "is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.* at 751 (quotation omitted). If the claimant's impairment is not equivalent to a listing, at step four the claimant must show that his impairment prevents him from performing work he

-3-

has preformed in the past. *See id.* If claimant succeeds, at step five the burden shifts to the Commissioner to show that the claimant retains the RFC to do other work in the national economy. *See id.*

It is claimant's burden to prove that his impairment is equivalent to a listing. *See id.* Here, claimant asserts that the ALJ erred in concluding that his impairment of obesity with hypertension did not meet or exceed 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 9.09B which states in part:

> 9.09 *Obesity* . Weight equal or greater than the values specified in Table I for males . . . and one of the following:
>
> . . . .
>
> B. Hypertension with diastolic blood pressure persistently in excess of 100 mm.

During a June 19, 1995 consultative examination of claimant for the Commissioner, Dr. Young Stokes, III, found claimant to be 65 inches tall and to weigh 289 pounds. This exceeds the listing on Table I of 65 inches tall and 279 pounds. As to the second part of the listing, claimant asserts that the ALJ erred in concluding that he did not have consistent diastolic blood pressure readings in excess of 100 mm., thereby satisfying both parts of the listing.

On July 14, 1986, while receiving treatment for a hematoma on his leg caused by an accident with an animal, claimant's blood pressure was recorded as 152/102. On November 11, 1995, claimant was admitted to the hospital

complaining of chest pain. At that time, his blood pressure was 191/97. He was hospitalized for three days with diagnoses of "probable unstable angina" and "arteriosclerotic heart disease." R. Vol. II at 108. He was discharged upon his insistence and against the advice of physicians after refusing a stress test. At the time of his discharge, his blood pressure was 125/84. During this hospitalization, his chest x-ray showed no indication of cardiopulmonary disease, and his echocardiogram was normal. On January 16, 1996, during a follow-up exam, claimant's blood pressure was 170/100. *See id.* at 102. Dr. Stokes measured claimant's blood pressure as 170/82 on June 19, 1995. *See id.* at 91.

Claimant contends that the ALJ erred in concluding that he only had one instance where his diastolic blood pressure exceeded 100 mm. We read the listing to require that claimant have consistent readings *in excess* of 100 mm. Consequently, we do not find in the record even one instance where claimant's diastolic blood pressure exceeded 100 mm. [3] Without deciding at this time how

---

[3]      A second progress report dated January 16, 1996, indicates a blood pressure reading of 168/90. *See* R. Vol. II at 132. Although unclear, it appears that in the course of giving a medical history, claimant reported that his blood pressure had been 220/120 prior to being giving medication at the time he was hospitalized. *See id.* Neither the emergency room record nor the progress reports of his hospitalization indicate that claimant's blood pressure was ever 220/120. *See id.* at 107, 109, 110, 111, 114, 128. Even if the blood pressure reading of 220/120 were an actual reading taken on that date, as discussed above it would constitute only one instance where claimant's diastolic reading was in excess of 100 mm., and still would not satisfy the consistency requirement of the listing.

many qualifying readings are necessary in order to demonstrate the consistency requirement of the listing, we determine that claimant's qualifying readings are too few to satisfy § 9.09B, and the ALJ was correct in concluding that claimant did not have an impairment which equaled or exceeded the listing.

Next, claimant asserts that the ALJ erred in determining that claimant retained the RFC to perform light work activity without any "significant non-exertional limitations which narrow the range of work he is capable of performing." *Id.* at 17. Although claimant's argument is a bit hard to follow, it appears that on appeal, claimant asserts that the ALJ failed to properly consider his heart problems, and failed to combine his heart problems with his complaints of chest and back pain to find disability.

Contrary to claimant's assertion, the ALJ thoroughly discussed claimant's allegation of constant chest pain. The ALJ found claimant's complaints to be incredible. During a consultative examination on June 19, 1995, claimant reported that he had never been treated for hypertension despite suffering from chest pain since 1993. *See id.* at 90. The ALJ noted that this was contrary to claimant's report on November 13, 1995, that he had been having chest pain for one year which lasted for two to three days at a time, and that there was no connection between the pain and physical exertion. *See id.* at 113. These reports were also contrary to a report on January 16, 1996, wherein claimant stated that

physical activity triggers the chest pain which lasts only five minutes. *See id.* at 102.

In determining claimant's RFC, the ALJ considered all of claimant's subjective complaints, weighing all the factors set forth in *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987). Claimant testified that he could not work due to chest pain and back pain, assertions that the ALJ found to be incredible. Here, the ALJ fulfilled his duty by making adequate findings regarding his credibility determination, *see Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995), and claimant does not challenge the ALJ's reasons or his conclusions as to claimant's credibility.

The record is entirely void of any objective medical evidence supporting claimant's allegations of disabling back pain. Claimant alleges, however, that the ALJ should have considered evidence of his back impairment submitted in support of his prior applications for disability benefits. In the current decision, the ALJ found that it was not necessary to consider whether claimant's prior applications should be reopened or revised because in this application, claimant alleged a disability onset date of April 1, 1995, which was well after the September 13, 1994 reconsideration determination of claimant's last application. Although this is not an express finding of res judicata, we agree with the ALJ that he need only consider evidence of claimant's condition after September 13, 1994.

This evidence is not included in the record on appeal, but is discussed by the ALJ in the 1993 decision denying claimant benefits.

The ALJ noted the inconsistency in claimant's reports as to the nature, duration, onset, and frequency of his pain. The ALJ found that although claimant alleged disabling back pain from an accident with an animal in 1988, he did not seek disability for the first time until 1992, and had never sought any medical treatment for relief of pain. The ALJ also noted the inconsistencies in claimant's test and examination results. During a consultative examination in June 1995, Dr. Stokes noted that claimant's spine was straight without scoliosis or scars. Claimant reported tenderness along the entire length of his spine and both shoulders. Dr. Stokes commented that although claimant reported joint deformity, he could find no deformity upon examination. Dr. Stokes concluded that claimant could do work related activities "unimpaired as to sitting, standing, moving about, lifting, handling objects, hearing, speaking and traveling." R. Vol. II at 94. He did note some "slight impairment as to carrying." *Id.*

In July 1995, one month later, an x-ray of claimant's spine showed that the lumbar disk were intact except for the "lumbarization of S1 segment," with "[n]o fractures or destructive changes seen." *Id.* at 98. X-rays of claimant's knees also indicated no abnormalities. On November 11, 1995, claimant's examination

while hospitalized indicated that all four of his extremities were within normal limits and that claimant had a full range of motion without pain. *See id.* at 112.

The ALJ also noted claimant's reluctance to follow prescribed treatment. Claimant left the hospital against his doctors orders after refusing to undergo a stress test. It appears that Dr. Deepak Jaizwal recommended that claimant have a heart catheterization to better determine the cause of his chest pain. At the time of his follow-up exam on January 16, 1996, he indicated that he wanted to think about it. *See id.* at 133. During a second follow-up exam on February 27, 1996, he reported that he was nervous about the catheterization. *See id.* at 142. At the time of his hearing on May 1, 1996, he testified that he was waiting for Dr. Jaizwal to arrange the procedure. *See id.* at 161-62. We conclude, therefore, that substantial evidence supports the ALJ's conclusion that claimant had the RFC to do a full range of light or sedentary work.

Finally, claimant argues that the ALJ erred in failing to ask a proper hypothetical question to the vocational expert. The magistrate judge found this claim to be unimportant because the ALJ relied on the grids to find claimant not disabled. Claimant asserts that his obesity, a nonexertional impairment, precludes the ALJ from reliance on the grids, and therefore, the ALJ should have relied on the opinion of the vocational expert in response to a complete hypothetical question.

"The mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). This is especially true where, as here, there is substantial evidence that claimant's nonexertional impairments do not interfere with his ability to work. *See id.* While we recognize that there is some evidence in the record favoring claimant's view of the severity of his impairments, our task here is not to reweigh the evidence. *See Kelley*, 62 F.3d at 337. Because we conclude that substantial evidence supports the ALJ's credibility determination as to claimant's pain and his ability to do light work despite his obesity, the ALJ's reliance on the grids was appropriate. Therefore, we do not address claimant's allegations of an incomplete hypothetical question posed to the vocational expert.

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge