**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ROBIN M. MILLER, on behalf of
Melissa N. Thompson, a minor,

      Plaintiff-Appellant,

  v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

      Defendant-Appellee.

No. 06-5083
(D.C. No. 04-CV-777-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN** and **BRORBY**, Circuit Judges, and **BROWN**,[**] District Judge.

In this Social Security case, the administrative law judge (ALJ) determined

that the minor daughter of Robin Miller suffers from the severe impairments of

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

[**]    The Honorable Wesley E. Brown, Senior District Judge, District of Kansas,
sitting by designation.

attention deficit/hyperactivity disorder, a central auditory processing disorder (CAPD), and oppositional/defiant disorder. Evaluating the case under the Commissioner's childhood disability standards, the ALJ determined that Ms. Thompson's impairments did not meet, medically equal, or functionally equal a listed impairment, and he denied Ms. Thompson's claim for Supplemental Security Income benefits. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. The district court affirmed, and Mrs. Miller appealed on Ms. Thompson's behalf. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

### *Standard of Review*

The standard of review in Social Security cases is (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[B]ecause our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). "We may neither reweigh the

evidence nor substitute our discretion for that of the [Commissioner]." *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

### *Analysis*

In children's disability cases, the ALJ follows a three-step process in determining whether the child meets the criteria for a qualification of disability: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has an impairment or combination of impairments that is or are severe; and (3) whether the child's impairment(s) meets, medically equals, or functionally equals the listings in 20 C.F.R., Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924(a) (2004). Mrs. Miller argues that the ALJ erred in his determinations at Steps 2 and 3 and in evaluating her credibility.

### I.

Mrs. Miller first contends that the ALJ erred at Step 2 by not assessing borderline intellectual functioning as one of Ms. Thompson's severe impairments. She points to several IQ test scores in the 70s and low 80s and argues that such scores, within the borderline range, require the ALJ to find a severe impairment as a matter of law. *See Cockerham v. Sullivan*, 895 F.2d 492, 496 (8th Cir. 1990).

*Cockerham*, however, addressed "[a] claimant whose alleged impairment is an IQ of 70-79 inclusive." *Id.* Some of Ms. Thompson's scores are within that range, but there is substantial evidence in the record that her intelligence is not necessarily borderline, but low average. *See* Aplt. App. Vol. 2 at 316 (stating

Full-Scale IQ of 81 on the WISC-III puts Ms. Thompson in the "Low Average range of intellectual ability"); 303 (Iowa Tests of Basic Skills Results showing her performance in many categories was within the average range of the national percentile ranks); 184 (stating she has "a low average IQ of 81"); 273 (reporting IQ score of 92 on the Test of Non-Verbal Intelligence and noting the WISC-III results may have been affected by her CAPD). Further, none of the tests was taken within two years before the relevant period, so none is valid under the regulations. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 112.00D10 (2004) (stating that results of IQ tests administered between ages 7 and 16 are valid for two years when tested IQ is above 40). It is not this court's task to reweigh the evidence to prefer particular scores and test results over others, but only to ensure that the ALJ's decision finds support in the evidence. *See Kelley*, 62 F.3d at 337; *Glenn v. Shalala*, 21 F.3d 983, 987-88 (10th Cir. 1994). We find no reversible error in the ALJ's failure to assess borderline intelligence as one of Ms. Thompson's severe impairments.

## II.

Mrs. Miller next argues that the ALJ erred at Step 3 by not specifically identifying the listed impairments that he considered and by underrating Ms. Thompson's limitations in the domain of acquiring and using information. *See* 20 C.F.R. § 416.926a(b)(1) (2004) (explaining that the Commissioner has

classified activities into six domains for purposes of evaluating functional equivalence).

A.

As the district court held, the regulations do not require the ALJ to refer to specific listed impairments in determining whether an impairment functionally equals the listings, but rather to evaluate the child's functioning in each of six domains. *See id.* § 416.926a(d) (2004). This regulation, however, addresses only the third of the evaluations an ALJ undertakes at Step 3; before determining whether an impairment *functionally equals* a listing, the ALJ must determine the impairment does not *meet* or *medically equal* a listing. *See id.* § 416.924(a) (2004). Arguably, the ALJ erred in failing to identify specific listings with regard to these two initial inquiries. *See id.* § 416.926(a) (2004) (stating that, in determining medical equivalence, the Commissioner compares the medical evidence to "the corresponding medical criteria shown for any listed impairment").

In *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), this court determined that a decision was "beyond meaningful judicial review" where "the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment." In *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730

(10th Cir. 2005), however, "[w]e reject[ed] a construction of *Clifton* that, based on a reading of the ALJ's decision as a whole, would lead to unwarranted remands needlessly prolonging administrative proceedings." We continued, "[w]here an ALJ provides detailed findings, thoroughly reviewed and upheld by the district court, that confirm rejection of the listings in a manner readily reviewable, requiring reversal would extend *Clifton* beyond its own rationale." *Id.* at 734. Here, although the ALJ did not identify the specific listings, his analysis contained detailed discussion of the record. Mrs. Miller alleges that the ALJ did not discuss Ms. Thompson's inattention, impulsiveness, or hyperactivity, but the ALJ's decision does reflect consideration of such factors. *See, e.g.*, Aplt. App. Vol. 2 at 18 (discussing allegedly impulsive behavior and school reports regarding her need for redirection and tendency to rush to complete tasks); 19 (noting report that she would begin working without understanding directions); 20 (noting teachers' report of her behavior at school); 25 (assessing Ms. Thompson with "marked" limitations in the domain of attending and completing tasks). In contrast to *Clifton*, the ALJ thoroughly reviewed the record evidence in his decision. We find no reversible error.

B.

If an ALJ finds that a claimant has marked limitations in at least two of the six domains, or extreme limitations in any of the domains, then the claimant's impairment(s) functionally equal(s) the listings. 20 C.F.R. § 416.926a(d) (2004).

-6-

The ALJ determined that Ms. Thompson has marked limitations in the domain of attending and completing tasks, but that she has less than marked limitations in the domains of acquiring and using information and interacting and relating with others. Mrs. Miller contends that the ALJ erred in finding less than marked limitations in the domain of acquiring and using information, so that Ms. Thompson must be considered disabled under § 416.926a(d) by virtue of having marked limitations in at least two domains.

A "marked" limitation occurs when an impairment(s) "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i) (2004). "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'" *Id.* In the domain of acquiring and using information, the Commissioner considers how well the claimant learns information and how well the claimant uses the information learned. *Id.* § 416.926a(g).

Mrs. Miller points to Ms. Thompson's academic difficulties and the several accommodations provided to her at school as proof that she has marked limitations in acquiring information. The record does support the inference that Ms. Thompson's impairments affect her ability to learn, and that she struggles in some subjects, particularly mathematics. The record does not, however, compel a finding that her limitations are necessarily "marked" rather than "moderate." There is substantial evidence that Ms. Thompson can learn and can use the

information she has learned. *See, e.g.*, Aplt. App. Vol. 2 at 222 (April 1999 examination stating Ms. Thompson's "academic achievement scores suggest below average skills in mathematics reasoning and applications and mathematics concepts. Otherwise, her scores are within normal limits for her age."); 325-26 (October 2002 notation that Ms. Thompson is able to do the same things as other students in her class, and the probable cause of failure to achieve at expected level was her choice to neglect her work); 328-29 (November 2002 examination indicating she knew basic facts, had mildly impaired performance with short-term memory, and knew abstractions); *see also id.* at 248 (progress report showing 4 Bs and 2 Cs, and noting that her grades had declined slightly); 244 (report card showing 1 B, 3 Cs, and 2 Ds, and promotion to seventh grade); 236 (report card showing 1 A-, 1 B, 1 B-, 1 C, and 1 D and promotion to eighth grade); 132 (report card showing grades were generally A, B, C, and passing); 128 (progress report showing 2 Bs, 3 Cs, and 1 F, and noting that she is capable of doing better work). In addition, three consulting sources rated her with "less than marked" limitations in this domain. *Id.* at 334, 341, 348. Given the presence of substantial evidence to support the ALJ's determination, we will not reverse, even though we might have made a different finding were we the factfinders. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Finally, Mrs. Miller complains that the ALJ discounted the credibility of her testimony. The ALJ determined that Mrs. Miller's testimony at the hearing contradicted the totality of the evidence with regards to Ms. Thompson's impairments.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). But "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (alteration and quotation omitted).

Here, the ALJ discussed testimony that was not corroborated by other evidence in the record, identifying particular examples, and stated that Mrs. Miller had made contradictory statements about Ms. Thompson's ability to get along with friends and family. Mrs. Miller disputes the ALJ's view of the evidence and relies on evidence to the contrary, but again, it is not this court's task to reweigh the evidence. As this court stated in another case:

> After examining the record as a whole, we are persuaded that the ALJ's credibility findings are closely and affirmatively linked to substantial evidence. Plaintiff's argument to the contrary constitutes an invitation to this court to engage in an impermissible reweighing of the evidence and to substitute our judgment for that of the Commissioner, an invitation we must decline.

*Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

### *Conclusion*

The judgment of the district court is AFFIRMED.

Entered for the Court


Wesley E. Brown
District Judge