**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 19 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROBERT L. BIBBS,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 00-5029
(D.C. No. 99-CV-116-M)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , Chief Judge, **EBEL** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Robert L. Bibbs appeals from the denial of social security disability and supplemental security income benefits. [1] We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g). We review the agency's decision on the whole record to determine only whether the factual findings are supported by substantial evidence and the correct legal standards were applied. See Goatcher v. United States Dep't of Health & Human Servs., 52 F.3d 288, 289 (10th Cir. 1995). We may not reweigh the evidence or substitute our judgment for that of the agency. See Kelley v. Chater, 62 F.3d 335, 337 (10th Cir. 1995).

Claimant was born in March 1954. He completed ninth grade and obtained a GED while in the Army. He went to cooks school in the Army and has worked primarily as a cook. He has also worked as a laborer and carpenter. He alleges that he became disabled on September 20, 1995, by severe, chronic, debilitating pain from nerve damage suffered during surgery in August 1995 to correct an aortic aneurysm.

The ALJ decided the claim at step five of the evaluation sequence. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps). He decided that claimant did not retain the residual functional capacity (RFC) to return to any of his past jobs, but that he retained the RFC for work

---

[1] The parties consented to proceed before a magistrate judge for final disposition. 28 U.S.C. § 636(c).

except that he cannot sit indefinitely and must have the option to change positions every hour; cannot lift more than twenty pounds occasionally and ten pounds frequently; cannot do extensive walking; cannot operate controls with his arms or reach overhead more than occasionally; cannot stoop, crouch, bend, or crawl more than occasionally; cannot climb scaffolding, ropes or ladders; cannot climb stairs more than occasionally; cannot operate motor vehicles more than occasionally; cannot tolerate exposure to high temperature, humidity, constant vibration, or concentrations of gases, dust, or fumes; and has no transferable skills. Appellant's App., Vol. II at 17, 19, 20 (findings 5, 10). The ALJ noted that the vocational expert (VE) testified that there were jobs that claimant could perform with these limitations. Id. at 19. Further, the ALJ noted that Rule 202.21 of the medical-vocational guidelines (the "grids") would direct a conclusion of not disabled. Id. at 20 (finding 11, citing 20 C.F.R. pt. 404, subpt. P, app. 2, table 2). The ALJ used the grid rule as a framework for decision-making, concluding based on all the evidence that claimant was not disabled. Id. at 20-21.

Claimant argues on appeal that the ALJ's conclusion that he does not suffer from disabling pain is not supported by substantial evidence because the ALJ applied incorrect standards to evaluate his claims of pain, such as "sit and squirm" jurisprudence; made unwarranted assumptions about his capabilities

based on comments about fishing and driving; distorted the medical record; and ignored factors supporting the credibility of claimant's testimony regarding pain.

The record supports claimant's claims of error. First, the ALJ inappropriately rejected the opinion of the agency's examining physician, Dr. Sikka.  See Appellant's App., Vol. II at 244-50.  The ALJ stated that no doctor said that claimant was disabled.  Id. at 17.  The ALJ misstated Dr. Sikka's opinion in his decision, however, stating that "Dr. Sikka . . . concluded the claimant could perform a range of light or sedentary work."  Id.  That is simply not true.  See id. at 244-50.  Rather, Dr. Sikka found claimant's limitations to be extensive.  See id. at 248-50.  According to Dr. Sikka, claimant can sit only for four hours total and thirty minutes at a time.  Id. at 248.  He can stand for four hours total and thirty minutes at a time, and walk for two hours total and thirty minutes at a time.  Id.  The VE could not identify any jobs that claimant can do if Dr. Sikka's restrictions are accepted as true.  Id. at 56-57.

Further, the ALJ picked through Dr. Sikka's opinion, rejecting his restrictions on sitting, standing, and walking, and accepting only those limitations that are consistent with a conclusion that claimant can work.  Id. at 17.  An ALJ is not entitled to pick and choose through a physician's opinion.  Switzer v. Heckler ,

-4-

742 F.2d 382, 385-86 (7th Cir. 1984); Smith v. Bowen , 687 F. Supp. 902, 904 (S.D.N.Y. 1988).

The regulations provide a list of acceptable reasons to reject a doctor's opinion, such as nature and length of relationship, medical specialty, et al. See 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6). The ALJ did not use any of these reasons to reject Dr. Sikka's opinion about claimant's ability to sit, stand, and walk, however. Rather, the ALJ used his own observation that claimant sat through the forty-five minute hearing with only one short stretch break, and Dr. Sikka's observation that claimant had normal gait and movement at his examination. Appellant's App., Vol. II at 17; see also id. at 246. The regulations do not allow the ALJ to substitute his opinion for a medical opinion. See 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6). Further, "where uncontroverted evidence corroborates the claimant's assertions of disabling pain, the ALJ 'may not reject [those] assertions on the basis of demeanor alone.'" Gay v. Sullivan , 986 F.2d 1336, 1339 (10th Cir. 1993) (quoting Teter v. Heckler , 775 F.2d 1104, 1106 (10th Cir. 1985)). As reviewed below, the record shows that claimant has continuously pursued relief for pain, without any doctor disbelieving his claims of pain. Even if the ALJ could rely on his own observation at the hearing, however, he said that claimant sat for forty-five minutes, and then found that claimant needed to change position every hour. Appellant's App., Vol. II at 19.

Therefore, the ALJ's finding on sitting would not be supported by substantial evidence in any case. Moreover, the ALJ failed to make specific findings about claimant's ability to stand and walk, even though those findings are a necessary part of the RFC determination. 20 C.F.R. §§ 404.1545(b), 416.945(b); Social Security Ruling 96-9p, 1996 WL 374185, at *2. In addition, it is not inconsistent that claimant can walk within normal limits but not for very long, so Dr. Sikka's opinion is not internally inconsistent. See Appellant's App., Vol. II at 244-50. Even if it were, the regulations call for the ALJ to evaluate Dr. Sikka's opinion in light of the record as a whole or recontact Dr. Sikka to explain any ambiguity or inconsistency in his opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

The ALJ also stated that claimant's treating physician, Dr. Parsons, suggested that there was work that claimant could do. Appellant's App., Vol. II at 17. We note that Dr. Parsons did not list claimant's functional limitations, see id. at 202-04, and so the ALJ could not ask the VE whether claimant can or cannot work based on Dr. Parsons' opinion. In any case, the fact that none of the doctors may have stated directly that claimant is permanently disabled is legally irrelevant. The ALJ is entitled to disregard a doctor's statement that a claimant is "disabled" or "unable to work." 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). It therefore would be inconsistent with the regulations to require the doctor to state such a conclusion. Moreover, the

limitations expressed by a doctor may amount to the same thing. And, as noted above, an ALJ is allowed to reject a doctor's opinion about the claimant's medical limitations only for certain reasons specified in the regulations. There is no vocational evidence based on Dr. Parsons' opinion that claimant can work. However, the vocational evidence based on Dr. Sikka's opinion is that claimant cannot work.

The record shows claimant's continuous attempts to find relief for pain. According to appellant's brief, Dr. Knott-Craig and Dr. Parsons performed his surgery, and the record shows that was on August 29, 1995. Nerves were adhered to the aneurysm and had to be stretched and detached from it during the surgery. Appellant's App., Vol. II at 130. Claimant started complaining of severe pain with deep breathing on August 31, and was prescribed a number of medications. Id. at 127. Dr. Knott-Craig reported that claimant was unrestricted by September 19, 1995, id. at 163, but Dr. Parsons wrote in October 1995 that claimant would be "incapacitated for a minimum of four to six months," id. at 188. Claimant went to a pain management center in February 1996 complaining of "constant, burning" chest wall pain. Id. at 198. Dr. Mansour tried a neuroma block, with good relief. Id. at 198. In March 1996, however, Dr. Parsons wrote that claimant had complained after surgery of "significant pain which was difficult to control . . . [and] continues to suffer from chronic deep chest wall pain." Id. at 202-03.

Dr. Parsons noted that claimant had made several visits to the pain management clinic, but his pain relief had been temporary. Id. at 203. At this point, Dr. Parsons said that nothing more could be done for claimant and he might never be able to work. Id.

Claimant also went to the emergency room several times between October 1995 and June 1996 complaining, in part, of chest pain. Id. at 212-24. He was periodically told to go back to his doctor for treatment instead of the emergency room. E.g., id. at 212, 218. The records show that he was taking Zestril, Atenol, Lortab, and Valium. He was told to limit Lortab and Valium--Lortab is a narcotic and Valium is also habit-forming. Id. at 219, 221, 223. Contrary to the ALJ's conclusion, the emergency room reports do not demonstrate that claimant had no severe problem, see id. at 16; they show that his complaints did not present an emergency, see id. at 212, 218. In fact, claimant reappeared at the emergency room several times between June and November 1996, still complaining, in part, of chest pain. See id. at 233-43.

In March 1996, claimant started seeing Dr. Clymer, an osteopath, for whiplash after a motor vehicle accident. See id. at 229. Dr. Clymer reviewed Dr. Parsons' records, and appears to have respected Dr. Parsons' opinion that claimant suffered chronic debilitating pain. See id. at 228. Claimant also did some physical therapy in April 1996, apparently related to the back and neck pain

caused by this car wreck. Id. at 205. He obtained significant relief, but the physical therapist suggested that claimant should limit the activities that cause pain. Id.

Although Dr. Clymer wrote that claimant was doing "extremely well" taking Lortab and Valium in September 1996, id. at 226, his earlier progress notes show that claimant was having trouble controlling pain without taking narcotics and that Dr. Clymer was concerned about the quantity claimant was taking. See id. at 226-30. For example, Dr. Clymer wrote in May 1996 that he did not mind prescribing pain medication, "but we must have controls on it." Id. at 228. His prescriptions were time-limited and reevaluated at each exam. See id. at 227-28. In July 1996, Dr. Clymer wrote that claimant said that he was unable to do without Lortab and Valium due to his chronic pain. See id. at 227. On the one hand, the "extremely well" comment shows that claimant can only find relief through addictive pain medication. On the other hand, the "extremely well" comment is overwhelmed by the other record evidence that claimant has been unable to find long-term relief for his pain, and it therefore does not constitute substantial evidence to support the ALJ's determination of nondisability. See Richardson v. Perales, 402 U.S. 389, 401 (1971).

-9-

As this court has observed, we neither weigh the evidence nor substitute our discretion for that of the agency. <u>Nonetheless, the evidence must have some substance to it.</u> . . . [W]hile we must review the record as a whole, the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.

<u>Kemp v. Bowen</u>, 816 F.2d 1469, 1475 (10th Cir. 1987) (quotations and citations omitted). The record contains no medical evidence contradicting this chain of attempts to find pain relief.

Evidence that claimant was able to drive to the hearing and that he still enjoys fishing (assuming that he has not given up fishing, as he testified) also does not support the ALJ's determination of nondisability. All the ALJ did with that evidence was conclude that claimant was "capable of light household chores." Appellant's App., Vol. II at 16. However, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1490 (10th Cir. 1993) (citing <u>Frey v. Bowen</u>, 816 F.2d 508, 516 (10th Cir. 1987)). "The 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity.'" <u>Id.</u> (quoting <u>Frey</u>, 816 F.2d at 516-17). We conclude that the ALJ's decision cannot be affirmed on this record and it must be reversed.

"When a decision of the [Commissioner] is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or

for an immediate award of benefits." <u>Ragland v. Shalala</u>, 992 F.2d 1056, 1060 (10th Cir. 1993). "Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." <u>Sorenson v. Bowen</u>, 888 F.2d 706, 713 (10th Cir. 1989) (quotation omitted). There is no vocational evidence that claimant can work based on Dr. Parsons' opinion. Moreover, the ALJ inappropriately rejected Dr. Sikka's opinion as to claimant's limitations, and the VE could not identify a job that claimant can do with these restrictions. This case is therefore in a posture to be remanded for an immediate award of benefits.

The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED, and the case is REMANDED for an immediate determination of benefits.

Entered for the Court

David M. Ebel
Circuit Judge