**Joyce H. BUSBY, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

No. 04–2024–JWL.

United States District Court, D. Kansas.

July 13, 2004.

Michael A. Comisky, Attorney at Law, Gladstone, MO, for Plaintiff.

Christopher Allman, Office of United States Attorney, Kansas City, KS, for Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Joyce H. Busby brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the defendant, Jo Anne B. Barnhart, the Commissioner of Social Security ("the Commissioner"), denying plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423. She contends the Commissioner erred by failing to correctly evaluate all relevant medical evidence, failing to assign adequate weight to her mental limitations, and failing to give adequate weight to her treating physician's opinion that she was disabled. For the reasons explained below, the court will affirm the Commissioner's decision denying plaintiff benefits.

## BACKGROUND

Plaintiff filed her DIB application with the Social Security Administration claiming she is disabled because of "bulging disks in neck that affect[ ] nerves running to face & shoulder [and] migraine headaches caused by nerve pressure." Plaintiff's application states that these conditions result in "constant pain, loss of strength in arms (especially right), headaches[,] nausea, dizziness, sometimes disoriented." Her DIB application was denied initially and on reconsideration.

At plaintiff's request, an Administrative Law Judge held a hearing. Following the hearing, the ALJ found at step one of the disability analysis that plaintiff did not perform substantial gainful activity after the alleged onset date of her disability. At step two, the ALJ found that plaintiff has

> a "severe combination of impairments,["] summarized as: Chronic pain syndrome; "mild" degenerative disc disease and "mild" arthritis in the cervical spine; status post carpal tunnel release on the right, November 17, 1999; status post arthroscopic surgery to the right knee, April 18, 1996; and history of anxiety and depression, manifested primarily with occasional situational aggravation.

(Tr. at 24.) The ALJ found at step three that plaintiff does not have any impairment or combination of impairments that

meet or equal any of the criteria in the listing of impairments. At step four, the ALJ found that plaintiff is not disabled because her residual functional capacity ("RFC") allows her to perform her past relevant work as a small appliance assembler, a playground supervisor, and a food service worker. The ALJ therefore denied plaintiff benefits.

The Appeals Council denied plaintiff's request for review, and the ALJ's decision therefore stands as the Commissioner's final decision. *Clifton v. Chater*, 79 F.3d 1007, 1008 (10th Cir.1996). Plaintiff now appeals that decision, raising essentially four arguments. First, she contends that the ALJ failed to correctly evaluate the relevant medical evidence pertaining to a medical procedure that Florin O. Nicolae, M.D., who is a pain management specialist, performed on plaintiff. Second, she contends that the ALJ failed to assign proper weight to the opinion of YeVonne Kimmitt, Ph.D., regarding the extent to which plaintiff's mental limitations directly impact her vocational abilities. Third, she contends that the ALJ failed to consider her hand problems that were documented by electromyography testing. And, fourth, she contends that the ALJ failed to give adequate weight to the opinion of her treating physician, Nelson P.H. White, M.D., that she is disabled.

## STANDARD OF REVIEW

█ Judicial review under 42 U.S.C. § 405(g) is limited to whether the Commissioner's decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir.2001); *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir.2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *White*, 271 F.3d at 1257 (quotation omitted); *accord Soliz v. Chater*, 82 F.3d 373, 375 (10th

Cir.1996) (same). Reversal may be appropriate when the Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994).

## ANALYSIS

For the reasons explained below, the court finds plaintiff's arguments to be without merit. The ALJ properly evaluated the relevant medical evidence pertaining to the cervical facet joint denervation by radiofrequency rhizotomy that Dr. Nicolae performed on plaintiff. The ALJ also appropriately credited Dr. Kimmitt's opinion regarding the extent to which plaintiff's mental limitations impact her vocational abilities. The ALJ also adequately considered the relevance of the electromyography testing regarding plaintiff's hands. Further, insofar as Dr. White arguably opined that plaintiff was disabled, the ALJ was not required to give controlling weight to those opinions because, as the ALJ thoroughly explained, Dr. White's opinions in that regard were unsupported by, and in some instances expressly contrary to, the medical evidence in the record.

## I. Evaluation of Relevant Medical Evidence Pertaining to Medical Procedure

█ On July 19, 2000, Dr. Nicolae performed a medical procedure on plaintiff called a cervical facet joint denervation by radiofrequency rhizotomy. This procedure essentially entailed surgically severing some of plaintiff's spinal nerve roots in order to relieve pain. *See Phillips v. Barnhart*, 357 F.3d 1232, 1235 (11th Cir. 2004) (providing a brief description of this

procedure). The transcript of the hearing reflects that the ALJ understood that this procedure involved the numbing of the nerves, but not the severing of the nerves. Plaintiff contends that the ALJ misunderstood the mechanics of this procedure and therefore failed to correctly evaluate all relevant medical evidence of record in violation of 20 C.F.R. § 404.1529(c) because the ALJ did not understand the significance of the nerves being cut in her back due to pain.

It is unclear whether plaintiff is contending that this consideration means that the ALJ should have found her disabled at step three or step four of the ALJ's five-step analysis. At the hearing, the ALJ discussed the nature of this procedure in the context of discussing whether plaintiff's impairment met the criteria of Listing 1.04A. This listing provides for disability when a "disorder[ ] of the spine ... result[s] in compromise of a nerve root or the spinal cord" along with (among other alternatives not present here) "[e]vidence of nerve root compression characterized by" atrophy-related motor loss and sensory or reflex loss. 20 C.F.R. § 404, Subpt. P, App. 1. In the ALJ's written opinion, the ALJ explained that Dr. Nicolae "did not diagnose or assess compromise of any nerve root as is required by Listing 1.04," he specified that there were "no obvious motor or sensory deficits," and he stated that an MRI showed no evidence of impingement of the nerve roots. (Tr. at 25.) Further, the ALJ noted that plaintiff's attorney acknowledged that there is no evidence of sensory or motor loss. Plaintiff has the burden of establishing a prima facie case of disability at step three, *see Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir.2003) (stating the claimant has this burden at steps one through four), and she clearly failed to meet that burden in terms of establishing an alleged disability under Listing 1.04A.

Thus, it appears more likely that plaintiff is arguing the ALJ's misunderstanding of this procedure resulted in an erroneous step four determination. Further, in light of the fact that plaintiff's argument relies on § 404.1529(c), it appears that plaintiff is contending the ALJ did not properly evaluate the relevance of this procedure in determining the intensity and persistence of her pain symptoms. The ALJ, however, properly understood that the procedure involved a numbing of the nerves, and thus the ALJ appropriately recognized the procedure as a pain management tool. In addition, the ALJ apparently recognized the significance of this procedure because the ALJ notably determined that the most severe component of plaintiff's chronic pain syndrome is the right cervical facet syndrome for which Dr. Nicolae performed this procedure. The ALJ also acknowledged that the record suggests plaintiff's symptoms improved as a result of this treatment, and that she made no further complaints of chronic neck or head pain following her final visit to Dr. Nicolae in January of 2001. Plaintiff has not presented evidence regarding any other relevant aspects of this procedure. The court is persuaded that the ALJ properly considered the relevant objective medical evidence regarding this procedure, even if the ALJ did not necessarily understand that the precise mechanics of the procedure involved severing nerve roots in order to achieve the end result of blocking the pain.

**B. Weight Given to Plaintiff's Mental Limitations**

 Plaintiff also contends that the ALJ erred by not assigning adequate weight to her mental limitations, namely her depression and anxiety. In support of this argument, plaintiff directs the court's attention to the opinion of Dr. Kimmitt, who conducted a consultative mental examination of plaintiff for the state agency. Dr. Kim-

mitt concluded that plaintiff's ability to work seemed to be rather severely impaired by her depression and anxiety because her "difficulty with memory and with being able to stay on task and follow instructions accurately would make it unlikely that she would be successful." (Tr. at 266.) Plaintiff argues the ALJ did not give Dr. Kimmitt's opinion enough weight or properly explain it as required by 20 C.F.R. § 404.1527.

Contrary to plaintiff's argument, however, the ALJ's opinion is consistent with Dr. Kimmitt's opinion in all relevant respects. The ALJ thoroughly considered the medical evidence of record concerning plaintiff's anxiety and depression. (Tr. at 23–24.) This included evidence from the medical records of plaintiff's treating physicians, Drs. White and Nicolae, as well as Dr. Kimmitt's opinion. The ALJ observed that many of plaintiff's episodes of anxiety and depression corresponded with other events in her life. For example, Dr. Nicolae noted that plaintiff experienced anxiety before he performed some of the pain management procedures. She took BuSpar intermittently for anxiety episodes due to insurance problems. She was depressed after the death of her mother, and she was depressed on another occasion because her husband lost his disability insurance benefits and was having suicidal ideations. Based on this evidence, the ALJ's conclusion that plaintiff has a "history of anxiety and depression, manifested primarily with occasional situational aggravation" is well supported by the record.

Moreover, in determining plaintiff's residual functional capacity ("RFC"), the ALJ apparently gave credit to Dr. Kimmitt's opinion regarding plaintiff's mental limitations. Dr. Kimmitt concluded that plaintiff has difficulty with memory and

with staying on task and following instructions. The ALJ appears to have credited this opinion because the ALJ's RFC assessment stated that plaintiff has mild to moderate difficulty maintaining concentration, persistence, and pace, which limits her to performing simple, repetitive work. The ALJ, then, assigned adequate weight to Dr. Kimmitt's opinion that plaintiff has difficulty with memory and with staying on task and following instructions. The ALJ was therefore not required to "explain away" Dr. Kimmitt's opinion under § 404.1527.

The only aspect of Dr. Kimmitt's opinion that the ALJ arguably did not fully credit was Dr. Kimmitt's conclusion that plaintiff's mental limitations rather severely impair her ability to work. That argument, however, fails for two reasons. First, as the ALJ recognized, Dr. Kimmitt further concluded that it was likely plaintiff would improve with treatment. More importantly, though, the ALJ was not required to give controlling weight to Dr. Kimmitt's opinion that plaintiff was disabled or unable to work. *See Ballard v. Barnhart*, No. 02–6368, 74 Fed.Appx. 872, 873–75 (10th Cir.2003) (explaining that the ALJ fully credited the plaintiff's treating physicians' opinions regarding her physical limitations but was not required to give credit to the physicians' conclusions that the plaintiff's restrictions meant that she was unable to perform any substantial and gainful work); *Bibbs v. Apfel*, No. 00–5029, 3 Fed.Appx. 759, 762 (10th Cir.2001) ("The ALJ is entitled to disregard a doctor's statement that a claimant is 'disabled' or 'unable to work.' ").[1] That is a legal conclusion that is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1), (3) (providing that the Commissioner will not give

---

1. The court cites these unpublished Tenth Circuit cases for their persuasive value on a material issue.

any special significance to a purported medical opinion that a claimant is disabled because that determination is reserved to the Commissioner).

■ Plaintiff's argument that the ALJ failed to include her mental limitations in the hypothetical question that the ALJ posed to the vocational expert is also without merit. In the hypothetical question that plaintiff quotes from the transcript, the ALJ *did* include the limitation that plaintiff could only perform simple repetitive tasks. This particular hypothetical question ultimately proved to be irrelevant because the ALJ posited this hypothetical when asking the vocational expert whether plaintiff could perform any work other than her past relevant work, which is a step five determination, whereas this case was decided at step four. What is relevant given the fact that the ALJ denied benefits at step four is the fact that the ALJ specifically asked the vocational expert whether plaintiff's various past relevant work required performing more than simple repetitive tasks. The vocational expert testified that plaintiff's past relevant jobs as a small appliance assembler, playground supervisor, and food service worker do not require performing more than simple repetitive tasks. The ALJ ultimately determined that plaintiff can perform these past relevant jobs because they are within plaintiff's RFC, and this determination is well supported by substantial evidence.

## C. Plaintiff's Hand Problems

■ Plaintiff also argues the ALJ failed to consider her hand problems as documented by electromyography testing. The ALJ did, however, consider the medical evidence of record on this issue. The ALJ acknowledged in the ALJ's step two analysis that the diagnosis from the August 30, 1999, electromyography characterized plaintiff's neuropathy as "moderate on the right and mild on the left." The ALJ further explained that plaintiff had carpal tunnel release surgery on the right on November 17, 1999, and that the surgeon released her to full work on January 14, 2000. The ALJ included "status post carpal tunnel release on the right, November 17, 1999," as one of the impairments that collectively constituted a severe combination of impairments. With respect to the "mild" neuropathy on plaintiff's left, the ALJ found that "[v]is-a-vis the claimant's alleged disability onset date, April 21, 2000, . . . the August 30, 1999 electromyographic diagnosis of mild neuropathy of the left wrist is individually 'non-severe.'" The ALJ further found that plaintiff's peripheral neuropathies did not meet Listing 11.14 because there is no evidence of disturbance of gross movement in the left wrist or arm, the left wrist has only "mild" carpal tunnel syndrome, and plaintiff has never had surgery on her left wrist.

In sum, then, the ALJ adequately considered the objective medical evidence concerning plaintiff's hand problems. Plaintiff does not point to any other evidence that the ALJ failed to consider on this issue. Accordingly, the ALJ did not err by not including any physical limitations created by plaintiff's alleged hand problems in her RFC. *See Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir.2000) (holding the ALJ did not err by not including in the RFC plaintiff's alleged inability to perform repetitive movements with his hands because that alleged limitation was not supported by the medical record).

## D. Weight Given to Dr. White's Opinion that Plaintiff is Disabled

■ Lastly, plaintiff contends the ALJ's decision is not supported by substantial evidence. The sum total of plaintiff's argument in this regard is one short paragraph in which she argues that Drs. White

and Kimmitt both diagnosed her as disabled. As explained previously, the ALJ fully credited Dr. Kimmitt's opinion regarding plaintiff's specific mental limitations and the ALJ was not entitled to treat Dr. Kimmitt's opinion that plaintiff was disabled with any special significance. The only remaining issue, then, is whether the ALJ properly considered Dr. White's opinion that plaintiff is disabled. The basis for plaintiff's argument in this regard is not entirely clear because plaintiff has not cited, and the court has not located, anywhere in the record where Dr. White specifically opined that plaintiff is disabled. Plaintiff's most colorable argument in this regard is that Dr. White completed a number of forms for plaintiff's attorney in which Dr. White opined that plaintiff's impairments satisfy various listings of impairments. Specifically, Dr. White checked "Yes" on a variety of forms indicating that he believes plaintiff's impairments satisfy Listings 1.04A, 11.14, 12.04, and 12.06A and B.[2] The court will therefore examine the extent to which the ALJ discounted those opinions. The ALJ also discounted Dr. White's RFC assessments, and thus the court will also examine the ALJ's reasons for discounting those opinions.

A treating physician's opinion that a patient is disabled is not dispositive because the disability determination ultimately rests with the Commissioner. *Castellano v. Sec'y of Health & Human Servcs.*, 26 F.3d 1027, 1029 (10th Cir.1994). In deciding how much weight to give a treating source opinion, the ALJ must first determine whether the opinion is entitled to controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.2003). The opinion is not entitled to controlling

weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or if it is inconsistent with other substantial evidence in the record, *id.* (quotation omitted), or if it is brief, conclusory and unsupported by medical evidence, *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987). Even if the opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300–01 (quotation omitted). After considering these factors, the ALJ must " 'give good reasons' ... for the weight he ultimately assigns the opinion." *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion that a claimant is disabled. *Goatcher v. United States Dep't of Health & Human Services.*, 52 F.3d 288, 290 (10th Cir.1995).

In this case, the ALJ gave specific, legitimate reasons for discounting Dr. White's opinions. The ALJ thoroughly evaluated the first and second of the six factors listed

---

**2.** Dr. White also found that plaintiff's impairments satisfy former Listing 1.05C. The ALJ, however, noted that Listing 1.05C has been superceded by Listing 1.04A. Further, plaintiff would not meet Listing 1.05C even if it were still in effect "because there is no evidence of significant motor loss with muscle weakness and sensory and reflex loss."

above. The ALJ explained that the length of the treatment relationship was during the entire period in question. The ALJ also observed that the frequency of examination during that time period was approximately monthly. In addition, the ALJ detailed the nature and extent of the treatment relationship. Dr. White saw plaintiff for, for example, sinus problems, various symptomatic complaints including migraine headaches, abnormal uterine bleeding, dizziness, tendinitis, foot tenderness, tingling in her neck and arms, and sore joints. He diagnosed her with, among other things, cervical disc disease and peripheral neuropathy. The ALJ noted that Dr. White prescribed plaintiff pain medications and referred her to other physicians primarily for head and neck pain, and he noted those other physicians' observations in his records.

The ALJ discounted Dr. White's opinions that plaintiff's impairments satisfied Listings 1.04A, 11.14, 12.04, and 12.06A and B because those opinions were not supported by the evidence, were inconsistent with the record as a whole, and/or were too brief and conclusory. For example, Listing 1.04A pertains to disorders of the spine. The ALJ explained that Dr. Nicolae did not diagnose or assess compromise of any nerve root as is required by Listing 1.04 and further stated that an MRI showed no evidence of impingement of the nerve roots. Also, plaintiff's attorney agreed that there is no evidence of sensory or motor loss, as Listing 1.04A requires. Thus, the ALJ found that "the record contains specific evidence that the claimant's condition does NOT meet the requirements of Listing 1.04A." (Tr. at 25.)

Listing 11.14 pertains to peripheral neuropathies. The ALJ found that plaintiff's left carpal tunnel syndrome did not satisfy the first part of this listing because plaintiff's alleged peripheral neuropathy is limited to the left median nerve. Further, there was no evidence of disturbance of gross movement in the left wrist or arm, another point that plaintiff's attorney conceded. The ALJ stated that even if Dr. White's observation that plaintiff's reduced sensation in her hands markedly reduces her dexterity and fine functions was assumed to be valid, "there clearly is no disturbance of gross movements." (Tr. at 25 (emphasis in original).) The ALJ noted that plaintiff was released to work with no restrictions following surgery on her right wrist, and plaintiff has never had surgery on her left wrist.

Listing 12.04 pertains to affective disorders. The ALJ noted that it was stipulated at the hearing that, contrary to what Dr. White circled, plaintiff does not have hallucinations or delusions. Further, the medical records do not show that she has paranoid thinking or thoughts of suicide. The ALJ further noted that plaintiff has never been to a psychiatrist or taken any anti-psychotic medications, which corroborates the lack of psychotic symptoms such as hallucinations or delusions. The only medical evidence on this issue is plaintiff's testimony that she has trouble concentrating and reading, she forgets easily, and she gets anxious thinking someone is thinking bad things about her. The ALJ explained that this is not paranoia, and no doctor has opined that plaintiff suffers from paranoia.

Listing 12.06 pertains to anxiety disorders. Despite the fact that Dr. White circled on the form that plaintiff has severe panic attacks, his treatment notes from January 24, 2001, stated that he told plaintiff that "none of her symptoms fit panic attack, that she has chronic pain." Also, despite that fact that he circled that plaintiff has apprehensive expectation, this was unsupported by any medical evidence of record other than "Dr. Nicolae's observation of pre-procedure anxiety before,

e.g., a cervical neck injection, which impresses as not necessarily abnormal." Although Dr. White circled that plaintiff's anxiety results in "marked" restrictions of activities of daily living, difficulties in maintaining social functioning, and difficulties in concentration, persistence, or pace, these findings were all inconsistent with plaintiff's testimony regarding her life activities. The ALJ also noted that the Part B restrictions in the Listings are graded out as None–Mild–Moderate–Marked–Extreme, whereas the form that plaintiff's attorney had Dr. White complete only provided for "marked" restrictions, and the ALJ had no idea what Dr. White may think "marked" means without reference to the full scale. Accordingly, the ALJ discounted Dr. White's opinion on this issue as brief, conclusory, and unsupported by the medical evidence.

The ALJ also noted that Dr. White listed Sjögren's disease on his medical source statement, but plaintiff's attorney stipulated that there is no diagnosis of Sjögren's syndrome anywhere in the medical records. Dr. White also listed lumbar disc disease as a diagnosis on his medical source statement, but there is likewise no diagnosis of lumbar disc disease in the medical records. Also, Dr. White briefly mentioned fibromyalgia once, but did not specify the diagnostic criteria (for which there are objective criteria).

Later, the ALJ again observed that Dr. White made many statements on plaintiff's attorney's listing forms "that are not supported by (and that even are contradicted by) his own treatment notes." (Tr. at 29.) The ALJ likewise specified a variety of specific reasons for discounting Dr. White's RFC assessments. For example, Dr. White based his RFC assessment on a diagnosis of Sjögren's disease, but again plaintiff does not have Sjögren's disease. Further, she does not have "markedly" reduced sensation in her hands because her treating physician for her right carpal tunnel surgery released her to full work and the carpal tunnel syndrome on her left wrist is mild enough that it has never required surgery. Dr. White's other RFC assessment is based on "cervical—lumbar disc disease," but there is no diagnosis of lumbar disc disease in the treatment records and the cervical disc disease is described as a "mild" paracentral bulge. Accordingly, the ALJ found that "Dr. White's conclusory RFC assessments are not reliable inasmuch as they are based on diagnoses not applicable to claimant and based on conclusions which contradict his own treatment notes at times." (*Id.*)

In sum, plaintiff has failed to direct the court's attention to any evidence in the record to support Dr. White's opinions. To the extent that the ALJ did not give these opinions controlling weight, that determination was well supported by substantial evidence in the record because the ALJ gave specific, legitimate reasons for discounting Dr. White's opinions—namely, that his opinions on plaintiff's attorney's forms were at times brief and conclusory, and were largely unsupported by, and in fact sometimes contrary to, other substantial medical evidence in the record.

## CONCLUSION

The court has thoroughly considered plaintiff's arguments in light of the record. The court concludes that the ALJ's decision is supported by substantial evidence in the record and that the ALJ applied the correct legal standards. In fact, the ALJ did a commendable job of thoroughly considering and evaluating the evidence in this case.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's motion for

summary judgment (doc. 7) is denied and the Commissioner's decision is affirmed.